UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY AARON, #275291,

                         Plaintiff,              Case No. 11-cv-13567
                                                 Honorable Robert H. Cleland
         v.                                      Magistrate Judge David R. Grand

KATHLEEN KIMMEL, *et al.*,

                         Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS [9], TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [10], AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]

Before the court are *pro se* Plaintiff Jeffrey Aaron's Motion for Judgment on the Pleadings [9] and Motion for Summary Judgment [13], and Defendants Kathleen Kimmel and Lanny Akers' Motion for Summary Judgment [10]. An Order for Reference for General Case Management [14] was entered on January 5, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [10] be **DENIED**, Plaintiff's Motion for Summary Judgment [13] be **DENIED**, and Plaintiff's Motion for Judgment on the Pleadings [9] be **DENIED**.

## I.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [10]

### A.    Factual Background

For purposes of Defendants' motion for summary judgment, the court takes as true all well-pleaded factual allegations in the complaint and construes all reasonable inferences from those allegations in Plaintiff Jeffrey Aaron's ("Aaron") favor. *See Smith v. Wyeth, Inc.*, 657 F.3d

420, 423 (6th Cir. 2011). Complaints of *pro se* litigants are construed more liberally than those drafted by attorneys. *See West v. Adecco Empl. Agency*, 124 Fed. Appx. 991, 992 (6th Cir. 2005), *citing Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, the following facts are taken generally from Aaron's complaint, as well as the sworn affidavit Aaron submitted in support of his response to Defendants' motion for summary judgment. (Doc. #13 at 12-16 ("Aaron Aff.")).

At the time of the events that led to his complaint, Aaron was a prisoner at the G. Robert Cotton Correctional Facility in Jackson, Michigan. (Doc. #1). In May of 2009, Aaron applied for employment with Michigan State Industries ("MSI") at the prison. (Aaron Aff., ¶1). On his application for employment, Aaron was asked whether he had "ever been found guilty of making a weapon or having a weapon in [his] possession" while an inmate. (*Id.* at Exhibit A). In response, Aaron said "yes," and indicated that, in March of 2008, "a screw was found in [his] area of control under [his] locker." (*Id.*).

In spite of this disclosure, Aaron was interviewed for employment with MSI by Defendant Kathleen Kimmel ("Kimmel"), an Industries Production Leader at MSI, and Janet Benson ("Benson") on May 29, 2009. (Doc. #1 at ¶¶1-2; Aaron Aff., ¶3). According to Aaron, during the course of this interview, he discussed with Kimmel and Benson the fact that his prison file contained this "dangerous contraband" misconduct. (Doc. #1 at ¶2). Aaron asserts that Kimmel expressed a lack of concern about the weapons charge. (Aaron Aff., ¶5). In her own affidavit, submitted in support of Defendants' motion for summary judgment, Kimmel does not deny that the conversation occurred; rather, she states only that she does "not recall" such a discussion. (Doc. #10 at Exhibit 1, ¶4). Regardless, despite Aaron's prior weapons misconduct, he was "cleared" by the Security Classification Committee and began working in the MSI mattress factory on June 1, 2009. (Doc. #1 at ¶3). During the course of Aaron's employment

with MSI, from June 1, 2009, through March 16, 2011, Aaron was awarded "above average" scores on all of his performance evaluations. (*Id.* at ¶4).

Aaron alleges that, at Kimmel's request, he trained several MSI new hires. (Aaron Aff., ¶15). He further alleges that prisoners who were hired after him, and who he trained, received promotions to lead positions and accompanying raises, while he did not. (Doc. #1 at ¶6). Aaron asserts that he complained to Kimmel about this numerous times, but that she responded by saying he was "lucky to have this job" because of the prior weapons misconduct. (Aaron Aff., ¶¶21-23).

On March 16, 2011, Aaron again approached Kimmel with his concerns. (*Id.*, ¶34). Kimmel told Aaron to stop complaining and warned him that if he did not do so, his employment would be terminated. (Doc. #1 at ¶¶12, 14). Later that same day, Aaron approached Defendant Lanny Akers ("Akers"), Plant Manager at the MSI mattress/garment factory (and Kimmel's supervisor), informed him of his repeated conversations with Kimmel, and asked that he "be promoted to the position of and paid for the work he was doing." (*Id.* at ¶8). According to Aaron, he told Akers that he was "being treated unfairly and discriminated against, [he] had done all [he] was asked, been respectful and polite, and took all of their threats of termination seriously and kept quiet in fear of losing [his] job." (Aaron Aff., ¶35). Akers allegedly told Aaron that, "This is Kimmel's mess! Whatever she does, I'll back her." (*Id.*, ¶36). Aaron then asked Akers who he could approach with his concerns, and questioned whether he could use the MDOC grievance process to address issues with MSI. (*Id.*, ¶37; Doc. #1 at ¶9).

Later that same day, as Aaron was leaving for lunch, Kimmel approached him at the time clock, saying, "You shouldn't have went to my boss again. Have a nice lunch." (Aaron Aff., ¶38). When Aaron returned from lunch, Akers called him into his office and terminated him,

ostensibly because of the 2008 weapons misconduct contained in his prison file. (*Id.*, ¶39; Doc. #1 at ¶17). When Aaron objected, reminding Akers that he and Kimmel had known about the prior misconduct at the time Aaron was hired, Akers allegedly responded by saying, "Policy is policy. Like I said, 'This is Kimmel's mess!' and I'm just cleaning it up!" (Aaron Aff., ¶40).

According to Aaron, he had been repeatedly warned by Kimmel and Akers that his 2008 misconduct could and would be used at any time to justify his termination. (Doc. #1 at ¶¶19-20). Aaron alleges that he was terminated approximately one hour after informing Akers that he believed he was being discriminated against, that he was taking his concerns to Akers' superiors, and that he wanted to file a grievance. (*Id.* at ¶¶22-23). On Aaron's final performance evaluation, he was issued a perfect score, but Defendants indicated nevertheless that they would not re-hire him. (*Id.* at ¶18).

Defendants deny that Aaron's employment was terminated because he threatened to file a grievance. Rather, they assert that it was a "mistake" to hire Aaron in the first place because there was an "oversight" regarding his prior weapons misconduct. (Doc. #10 at 1-2). According to the prison work rule relied on by Defendants, prisoners found guilty of the "major misconduct charge of 'Possession of Dangerous Contraband' i.e., weapons and/or materials that could be used as weapons . . . will be restricted from working at MSI for five (5) years." (*Id.* at 2). Defendants assert that Akers was unaware of Aaron's weapons misconduct at the time of his hire and that, as soon as he learned of it (on March 16, 2011, apparently), Aaron's employment was terminated pursuant to the work rule. (*Id.*). Despite the indication on Aaron's final performance evaluation that he would not be re-hired, Defendants also assert that Akers told Aaron "that he could reapply for the position after the five year time period had expired." (*Id.*).

On August 16, 2011, Aaron filed his complaint against Kimmel and Akers, asserting a

federal claim for First Amendment retaliation (pursuant to 42 U.S.C. §1983), as well as state law claims for conspiracy and intentional infliction of emotional distress ("IIED"). (Doc. #1).

### B.     The Parties' Arguments

On November 21, 2011, Kimmel and Akers filed a Motion for Summary Judgment [10]. In their motion, Defendants argue that summary judgment is appropriate on Aaron's First Amendment retaliation claim because he did not engage in protected conduct, he did not suffer an adverse action, and there was no causal link between any alleged protected conduct and adverse action. Defendants further argue that, even if Aaron stated a claim for First Amendment retaliation, Kimmel and Akers are entitled to qualified immunity because they did not violate Aaron's clearly established constitutional rights. With respect to Aaron's state law claims, Defendants argue that, because Aaron's federal claim fails, the court should decline to exercise supplemental jurisdiction. And, lastly, Defendants argue that if the court were to consider the merits of Aaron's conspiracy and IIED claims, "Plaintiff's vague and conclusory allegations are insufficient to survive dismissal, and certainly not summary judgment." (Doc. #10 at 8).

Aaron filed a response to Defendants' motion, as well as a cross-motion for summary judgment, on December 16, 2011 [13], arguing that summary judgment should be granted in his favor, not Defendants', on all of his claims. No reply or response to this pleading was filed by Defendants. Pursuant to the District Court's November 28, 2011 Notice Requesting Response [11], this matter is now ready for a report and recommendation.

### C.     Standard of Review

Federal Rule of Civil Procedure 56 provides that, "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v.*

*Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558, *quoting Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989).

**D.    Analysis**

*1.    First Amendment Retaliation*

Under Sixth Circuit law, to establish a claim for First Amendment retaliation, brought pursuant to 42 U.S.C. §1983, the plaintiff must show that: (1) he engaged in protected conduct;

(2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendants argue that Aaron has failed to establish each of the three elements.

a.     Protected Conduct

Defendants do not affirmatively dispute that Aaron raised questions and concerns, and subsequently threatened to file a grievance, regarding the fact that other employees were promoted and given raises while he was not.[1] It is settled law that a prisoner has the First Amendment right to file a grievance against prison officials on his own behalf, and such action constitutes protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). Although Aaron did not *actually* file a grievance against Kimmel or Akers – but merely *threatened* to do so – such conduct is also protected activity. *See Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009) ("Once a prisoner makes clear his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right."); *see also Pasley v. Conerly*, 2010 WL 3906120 (E.D. Mich. Sept. 10, 2010).

Although apparently acknowledging this general rule, Defendants argue that, in this case, Aaron's conduct was not constitutionally protected because he "made complaints about not being promoted in a job that he had no right to be in." (Doc. #10 at 4). According to Defendants,

---

[1] In their Affidavits, both Kimmel and Akers assert that they "do not recall" whether Aaron approached them with his concerns in this regard. (Doc. #10 at Exhibit 1, ¶¶8-9 and Exhibit 2, ¶¶3-4). However, for purposes of Defendants' motion, the court must view the evidence in the light most favorable to Aaron and, thus, will assume that such conversations occurred as he alleges. *See Matsushita*, 475 U.S. at 587.

prisoners do not have a First Amendment right "to ask for things that are unlawful or against prison regulations." (*Id.*).  Defendants cite no case law in support of this argument.  Essentially, Defendants liken Aaron's grievance to a frivolous one, the filing of which courts have recognized is *not* protected conduct.  *See Thomas*, 481 F.3d at 440.  In this case, however, for the reasons discussed more fully below, it is not clear that Aaron's threatened grievance was frivolous or even that he sought something prohibited by law or prison regulations.  As such, a genuine issue of material fact exists as to whether Aaron engaged in protected conduct.

b.    Adverse Action

As set forth above, retaliation against a prisoner is actionable "if it is capable of deterring a person of ordinary firmness" from exercising his First Amendment rights.  *See Thaddeux-X*, 175 F.3d at 398.  Not every action is an adverse action; *de minimis* slights and inconveniences do not qualify.  *Id.* at 396.  But, courts have recognized that termination from prison employment constitutes an adverse action because it is sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights.  *See, e.g., Catanzaro v. Mich. Dep't of Corrs.*, 2011 WL 7113245 (W.D. Mich. Dec. 16, 2011) (termination of plaintiff from prison employment and false charge of misconduct constituted adverse action); *Jefferson v. Wolfe*, 2006 WL 1947721 (W.D. Pa. July 11, 2006).

In this case, however, Defendants argue that Aaron did not suffer an adverse action because he was terminated "from a job that he was not entitled to under the rules." (Doc. #10 at 4-5).  Again, Defendants cite no case law in support of this argument.  The law is clear that – even outside the unique circumstances presented in this case – prisoners do not have a general right to a particular job (or even to *a* job).  *See McKinley v. Bowlen*, 8 Fed. Appx. 488, 492 (6th Cir. 2001), *citing Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir. 1989).  Despite this fact,

however, prison officials may not terminate a prisoner's employment in retaliation for the exercise of First Amendment rights. *See DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000) ("the fact that [the plaintiff] does not have a liberty or property interest in his former prison job does not foreclose his equal protection and retaliation claims arising from the loss of that job"); *Jefferson*, 2006 WL 1947721 at *13 ("Although there is no right to a job or a particular position in a prison, prison officials cannot punish or retaliate against a prisoner who exercises his First Amendment rights."). Therefore, Defendants' protestations notwithstanding, their terminating Aaron from employment with MSI constitutes an adverse action for purposes of Aaron's First Amendment retaliation claim, even if he did not have a "right" to remain in that job.[2]

Defendants also argue that there is no evidence that Kimmel had any direct involvement with the decision to terminate Aaron's employment. (Doc. #10 at 4). Aaron has alleged, however, that when he complained to Akers, Akers said, "This is Kimmel's mess! Whatever she does, I'll back her." (Doc. #1 at ¶¶5-8; Aaron Aff., ¶36). Aaron further alleges that, later that same day, Kimmel told him "that he should not have went to her boss, Akers." (Doc. #1 at ¶16). Less than an hour after this alleged conversation, Aaron was terminated, purportedly because Akers had just discovered the 2008 weapons misconduct. Although Kimmel denies any involvement in the decision to terminate Aaron's employment, Aaron's allegations, which the court must credit at this stage, suggest otherwise, and establish a genuine issue of material fact precluding summary judgment.

---

[2] Moreover, it is not entirely clear that the work rule relied upon by Defendants in terminating Aaron's employment, contained in the MSI Operating and Work Rule Manual (Doc. #10 at Exhibit 3, p. 5) even applies to the situation at hand. Although a prior weapons misconduct conviction could certainly be a reason not to hire a particular inmate, the specific cited work rule, which falls under the heading "Discipline Including Termination," can be read to apply only to *current* MSI employees found guilty of weapons misconduct during the term of their employment. (*Id.*).

c.    Causal Link

In order to establish the third element of a First Amendment retaliation claim, the plaintiff must establish a causal connection between the protected conduct and the adverse action.  *See Thaddeus-X*, 175 F.3d at 399.  Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals may, by inference, support the required showing.  *See Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002).  Once the plaintiff meets his burden of establishing that his protected conduct was at least a motivating factor behind any harm, the burden of production shifts to the defendant.  *Id.*  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.  *Id.*

In his complaint, Aaron points to the timing of his termination – approximately one hour after he spoke with Akers about filing a grievance – as evidence of a causal connection.  Courts have recognized that "temporal proximity alone may be significant enough to constitute indirect evidence of causal connection so as to create an inference of retaliatory motive."  *Pasley*, 2010 WL 3906120 at *23, *citing Muhammad v. Close,* 379 F.3d 413, 417-18 (6th Cir. 2004).  That is particularly true where, as here, the temporal relationship of relevant events appears strong.  In addition to timing, however, Aaron offers other circumstantial evidence of a causal link.  Specifically, Aaron asserts that Kimmel had repeatedly warned him that his 2008 misconduct could be used at any time to justify his termination.  Then, when he spoke to Akers and threatened to file a grievance, the prior weapons misconduct was in fact asserted as the basis for his immediate termination.  These facts, taken in the light most favorable to Aaron, support an inference of a causal connection between his protected conduct and his termination.

Because Aaron has met his initial burden of establishing a causal link, the burden shifts to

Defendants to show that they would have taken the same action even in the absence of Aaron's protected activity. *See Thaddeus-X*, 175 F.3d at 399. Defendants assert that the decision to terminate Aaron "was made solely because the rules required a five year waiting period." (Doc. #10 at 5). According to Defendants, the hiring of Aaron despite his prior weapons misconduct was an "oversight," and as soon as Akers became aware of this misconduct, he terminated Aaron's employment. (*Id.*). In other words, Defendants argue that – regardless of Aaron's protected conduct – his employment would have been terminated pursuant to the cited work rule as soon as the "oversight" was discovered.

Viewing the evidence as a whole, there exists a genuine issue of material fact as to whether this is, in fact, the case. The evidence establishes that Aaron disclosed his 2008 weapons misconduct on his application for employment with MSI. (Aaron Aff. at Exhibit A). According to Aaron, during the course of the interview process, he discussed this misconduct with Kimmel and Benson, yet he was still hired. (Doc. #1 at ¶2; Aaron Aff., ¶5). In her affidavit, Kimmel does not deny that this conversation occurred; rather, she states only that she does "not recall" such a discussion.[3] (Doc. #10, Exhibit 1 at ¶4). Regardless, Aaron was "cleared" by the Security Classification Committee and worked for MSI for nearly two years, receiving above-average performance scores. (Doc. #1 at ¶¶3-4). Arguably, then, Defendants did not strictly enforce the work rule in question such that one could conclude that their awareness of Aaron's pre-hiring weapons charge would have necessarily resulted in his termination as they contend. In light of these facts, a reasonable factfinder could conclude that Defendants' stated reason for terminating Aaron's employment – namely, their belated discovery of his 2008 weapons misconduct – was pretextual in nature, and that a causal connection exists

---

[3] Absent from Defendants' motion is a sworn statement from Benson on this issue.

between Aaron's protected conduct and his termination. As such, Defendants' Motion for Summary Judgment should be denied on Aaron's First Amendment retaliation claim.

### 2. *Qualified Immunity*

Defendants argue that even if Aaron has stated a claim for First Amendment retaliation, they are entitled to qualified immunity because their actions were not objectively unreasonable in light of clearly established law. (Doc. #10 at 6).

The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004), *quoting Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Courts apply a two-part inquiry to determine whether a defendant is entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first step is to determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" *Id.* at 201. If a constitutional violation is shown, the court also considers "whether the right was clearly established." *Id.* As the plaintiff in this case, Aaron bears the burden of proving that Kimmel and Akers are not entitled to qualified immunity. *Id.*; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

As set forth above, viewing the facts in the light most favorable to Aaron, he has made out a First Amendment retaliation claim, which satisfies the first prong of the qualified immunity test. The next question, then, is whether the constitutional violation at issue involved a clearly established right of which a reasonable person would have known. To meet that standard, the right's contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202.

Defendants argue that their actions were not objectively unreasonable because, "There is no case law to support the conclusion that Plaintiff could not be terminated from his job after the mistake was discovered regarding his 2008 misconduct." (Doc. #10 at 7). Regardless of whether the cited work rule technically prohibited Aaron's employment, however, a reasonable official would know that terminating a prisoner's employment in retaliation for his threat to file a grievance – regardless of the justification articulated – would violate clearly established principles of law. As the Supreme Court has explained, an official "can still be on notice that [his] conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Thus, if, as Aaron alleges, the Defendants terminated his prison employment in retaliation for his threatening to file a grievance, Defendants knew or should have known that such conduct on their part would violate Aaron's constitutional rights. Accordingly, based on the present record, Defendants are not entitled to qualified immunity as a matter of law.

3.     *Plaintiff's State Law Claims*

Defendants argue that if Aaron's federal claim is dismissed, the court should decline to exercise supplemental jurisdiction over Aaron's state law claims for conspiracy and IIED. (Doc. #10 at 7-8). However, because the court is recommending that Aaron's First Amendment retaliation claim survive Defendants' summary judgment motion, and because the state and federal issues in this case are so closely related, the interests of judicial economy are best advanced by the court retaining supplemental jurisdiction over Aaron's state law claims. *See Mason and Dixon Lines, Inc. v. Steudle*, 761 F. Supp. 2d 611, 627-68 (E.D. Mich. 2011).

Defendants also argue that, on the merits, summary judgment is appropriate on both of Aaron's state law claims. However, Defendants' arguments in this respect are cursory and lacking in analysis. With respect to Aaron's conspiracy claim, Defendants argue only that

Aaron's "vague and conclusory allegations" are insufficient, and that "there is no evidence that Defendants conspired to do any unlawful action." (Doc. #10 at 8). At this stage of the proceedings, however, when no discovery has taken place, Aaron's allegations of wrongdoing by Kimmel and Akers described above are sufficient.

Similarly, Defendants assert that Aaron's IIED claim fails because Defendants' alleged actions – in firing Aaron "from a job that he had no right to" – were not sufficiently "extreme and outrageous" so as to survive dismissal. (*Id.* at 9). As set forth above, however, material questions of fact exist regarding Aaron's termination, and he should be permitted to pursue discovery relevant to that matter and Defendants' arguments. Accordingly, summary judgment is inappropriate on this claim at this stage of the proceedings.

## II.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13]

At the conclusion of Aaron's response to Defendants' motion for summary judgment, he inserts a one-paragraph argument urging that he is entitled to summary judgment.[4] (Doc. #13 at 7). Courts have recognized that while a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces the "substantially higher hurdle" of showing that "the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Catanzaro,* 2011 WL 7113245 at *2 (internal citations omitted). While Aaron has established the existence of genuine issues of material fact regarding his retaliation, conspiracy, and IIED claims sufficient to overcome Defendants' summary judgment motion, he has not shown that he is entitled to judgment as a matter of law, and Defendants have presented sufficient evidence of their own to overcome Aaron's summary

---

[4] While the court's Electronic Filing Policies and Procedures provide that "a response . . . to a motion must not be combined with a counter-motion," (ECF L.R. 5(3)), Defendants have not objected to Aaron's motion. Given this fact, as well as Aaron's *pro se* status, the court will consider Aaron's pleading as a cross-motion for summary judgment.

judgment motion.  Accordingly, Aaron's motion for summary judgment should be denied.

## III.  PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS [9]

Also before the court is Aaron's Motion for Judgment on the Pleadings [9].  Fed. R. Civ. P. 12(c) provides that, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 7(a) defines "pleadings" to include a complaint and an answer.  A Rule 12(c) motion is considered premature if made before an answer is filed.  *See Crump v. Prelesnik*, 2012 WL 948557 (W.D. Mich. Mar. 19, 2012).

In this case, Defendants had until November 28, 2011 to answer or otherwise respond to the complaint, *see* 11/2/11 docket entry, and they timely filed their instant motion on November 21, 2011.  Aaron filed his motion for judgment on the pleadings on November 10, 2011.  Thus, the pleadings were not "closed," as required by Fed. R. Civ. P. 12(c), at the time Aaron filed his motion, and the motion should be denied on this basis alone.  *See Crump, supra*; *see also Santiago v. Kourt*, 2009 WL 3837644 (E.D. Mich. Nov. 17, 2009).

Moreover, even if the court were to consider the merits of Aaron's motion for judgment on the pleadings, his motion should be denied.  The standard of review applicable to a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6).  *See Bell v. JP Morgan Chase Bank*, 2006 WL 1795096 (E.D. Mich. June 28, 2006), *citing Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001).  "All well pleaded material allegations of the non-moving party's pleadings are taken as true and allegations of the moving party that have been denied are taken as false."  *Bell,* 2006 WL 1795096 at *1 (internal citations omitted).  The motion should be granted only when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.  *See United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993).

It is clear from a review of Defendants' motion for summary judgment that they are, in effect, denying the crucial allegations in Aaron's complaint. Specifically, both Kimmel and Akers have submitted affidavits denying Aaron's allegations that he was removed from his prison employment because he threatened to file a grievance challenging Kimmel's repeated failure to promote him and/or to give him the raise he felt he deserved. (Doc. #10 at Exhibits 1 and 2). For purposes of Aaron's motion for judgment on the pleadings, this court must accept Defendants' version of these events. *See Bell,* 2006 WL 1795096 at *1. Thus, Aaron's motion for judgment on the pleadings should be denied on the merits.

## IV.    CONCLUSION

For the reasons set forth above, IT IS RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [9], Defendants' Motion for Summary Judgment [10], and Plaintiff's Motion for Summary Judgment [13] all be DENIED.


Dated: April 25, 2012                                   s/  David R. Grand
                                                        DAVID R. GRAND
                                                        UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 25, 2012.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager
