UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY AARON,

    Plaintiff,

v.                                                                          Case No. 11-13567

KATHLEEN KIMMEL and
LANNY AKERS,

    Defendants.
                                       /

**OPINION AND ORDER SUSTAINING DEFENDANTS' OBJECTIONS
AND REJECTING THE REPORT AND RECOMMENDATION, DENYING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND
DISMISSING WITHOUT PREJUDICE PLAINTIFF'S STATE-LAW CLAIMS**

Before the court in this prisoner civil rights suit is the magistrate judge's report and recommendation ("R&R") advising the denial of Plaintiff's motion for judgment on the pleadings and Defendants' motion for summary judgment. Defendants filed timely objections to the R&R and Plaintiff responded. After reviewing the R&R and the parties' briefs, the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). Because Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim, the court will sustain Defendants' objections to the R&R and grant their motion for summary judgment.

**I. BACKGROUND**

The facts underlying Plaintiff's claims, as alleged in his complaint and an affidavit filed in response to Defendants' motion for summary judgment, were aptly summarized by the magistrate judge as follows:

At the time of the events that led to his complaint, [Plaintiff Jeffrey Aaron ("Aaron")] was a prisoner at the G. Robert Cotton Correctional Facility in Jackson, Michigan. In May of 2009, Aaron applied for employment with Michigan State Industries ("MSI") at the prison. On his application for employment, Aaron was asked whether he had "ever been found guilty of making a weapon or having a weapon in [his] possession" while an inmate. In response, Aaron said "yes," and indicated that, in March of 2008, "a screw was found in [his] area of control under [his] locker."

In spite of this disclosure, Aaron was interviewed for employment with MSI by Defendant Kathleen Kimmel ("Kimmel"), an Industries Production Leader at MSI, and Janet Benson ("Benson") on May 29, 2009. According to Aaron, during the course of this interview, he discussed with Kimmel and Benson the fact that his prison file contained this "dangerous contraband" misconduct. Aaron asserts that Kimmel expressed a lack of concern about the weapons charge. In her own affidavit, submitted in support of Defendants' motion for summary judgment, Kimmel does not deny that the conversation occurred; rather, she states only that she does "not recall" such a discussion. Regardless, despite Aaron's prior weapons misconduct, he was "cleared" by the Security Classification Committee and began working in the MSI mattress factory on June 1, 2009. During the course of Aaron's employment with MSI, from June 1, 2009, through March 16, 2011, Aaron was awarded "above average" scores on all of his performance evaluations.

Aaron alleges that, at Kimmel's request, he trained several MSI new hires. He further alleges that prisoners who were hired after him, and who he trained, received promotions to lead positions and accompanying raises, while he did not. Aaron asserts that he complained to Kimmel about this numerous times, but that she responded by saying he was "lucky to have this job" because of the prior weapons misconduct.

On March 16, 2011, Aaron again approached Kimmel with his concerns. Kimmel told Aaron to stop complaining and warned him that if he did not do so, his employment would be terminated. Later that same day, Aaron approached Defendant Lanny Akers ("Akers"), Plant Manager at the MSI mattress/garment factory (and Kimmel's supervisor), informed him of his repeated conversations with Kimmel, and asked that he "be promoted to the position of and paid for the work he was doing." According to Aaron, he told Akers that he was "being treated unfairly and discriminated against, [he] had done all [he] was asked, been respectful and polite, and took all of their threats of termination seriously and kept quiet in fear of losing [his] job." Akers allegedly told Aaron that, "This is Kimmel's mess! Whatever she does, I'll back her." Aaron then asked Akers who he could approach with his concerns, and questioned whether he could use the MDOC grievance process to address issues with MSI.

>       Later that same day, as Aaron was leaving for lunch, Kimmel approached him at the time clock, saying, "You shouldn't have went to my boss again. Have a nice lunch." When Aaron returned from lunch, Akers called him into his office and terminated him, ostensibly because of the 2008 weapons misconduct contained in his prison file. When Aaron objected, reminding Akers that he and Kimmel had known about the prior misconduct at the time Aaron was hired, Akers allegedly responded by saying, "Policy is policy. Like I said, 'This is Kimmel's mess!' and I'm just cleaning it up!"
>
>       According to Aaron, he had been repeatedly warned by Kimmel and Akers that his 2008 misconduct could and would be used at any time to justify his termination. Aaron alleges that he was terminated approximately one hour after informing Akers that he believed he was being discriminated against, that he was taking his concerns to Akers' superiors, and that he wanted to file a grievance. On Aaron's final performance evaluation, he was issued a perfect score, but Defendants indicated nevertheless that they would not re-hire him.
>
>       Defendants deny that Aaron's employment was terminated because he threatened to file a grievance. Rather, they assert that it was a "mistake" to hire Aaron in the first place because there was an "oversight" regarding his prior weapons misconduct. According to the prison work rule relied on by Defendants, prisoners found guilty of the "major misconduct charge of 'Possession of Dangerous Contraband' i.e., weapons and/or materials that could be used as weapons . . . will be restricted from working at MSI for five (5) years." Defendants assert that Akers was unaware of Aaron's weapons misconduct at the time of his hire and that, as soon as he learned of it (on March 16, 2011, apparently), Aaron's employment was terminated pursuant to the work rule. Despite the indication on Aaron's final performance evaluation that he would not be re-hired, Defendants also assert that Akers told Aaron "that he could reapply for the position after the five year time period had expired."

(R&R 2-4, Dkt. # 15 (record citations omitted).)

On August 16, 2011, Plaintiff filed his complaint in this court, alleging a claim against Defendants under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment, as well as related state-law claims for conspiracy and intentional infliction of emotional distress. Plaintiff filed a (premature) motion for judgment on the pleadings on November 11, 2011, and Defendants filed a motion for summary judgment on

November 21, 2011. The R&R, issued on April 25, 2012, concludes that Plaintiff has demonstrated a genuine dispute of material fact as to each element of a First Amendment retaliation claim, that Defendants are not entitled to qualified immunity, and that disposition of Plaintiff's state-law claims is inappropriate at this stage in the litigation; accordingly, the R&R advises the denial of both Defendants' and Plaintiff's motions. On May 9, 2012, Defendants objected to the recommendation that summary judgment should not be granted, arguing Plaintiff has not shown that he engaged in conduct protected by the First Amendment and, in any case, they should be given qualified immunity on Plaintiff's § 1983 claim.

## II.  STANDARD

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court "is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting *Anderson*, 477 U.S. at 251-52). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

5

### B.  Timely Objections and *De Novo* Review

The filing of timely objections to an R&R requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This *de novo* review requires the court to re-examine all the relevant evidence previously reviewed by the magistrate judge, in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute," *Thomas v. Arn,* 474 U.S. 140, 147 (1985).  As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

### III. DISCUSSION

Defendants object to two aspects of the R&R.  First, they take issue with the determination that the actions for which Defendants allegedly retaliated against Plaintiff are entitled to constitutional protection.  Second, Defendants challenge the conclusion that qualified immunity does not shield them from liability for the alleged violation of Plaintiff's First Amendment rights.  The question of whether Plaintiff engaged in

protected conduct is a close one, but it is clear to the court that Defendants' actions are within the scope of their qualified immunity. Therefore, summary judgment for Defendants is appropriate.

The R&R ruled that Plaintiff has shown a genuine issue of material fact as to whether Defendants retaliated against him for the exercise of his First Amendment rights. In the Sixth Circuit, a retaliation claim comprises three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendants' first objection concerns only the first prong: engagement in protected conduct. On this point, the R&R found that Plaintiff "raised questions and concerns, and subsequently threatened to file a grievance, regarding the fact that other employees were promoted and given raises while he was not." (R&R 7.) In light of the "settled law that a prisoner has the First Amendment right to file a grievance against prison officials on his own behalf," (*id.* (citing *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007))), the R&R reasoned that Plaintiff's *threat* to file a grievance is also protected activity.

In contrast to the R&R's interpretation of Plaintiff's allegations, the court finds it far from clear that Plaintiff made a threat to file a grievance to either Defendant Kimmel or Defendant Akers. In the complaint, Plaintiff states only that he "asked Kimmel and Akers who could he take his concerns to above Akers and use the MDOC grievance process regarding MSI matters." (Compl. ¶ 9, Dkt. # 1.) It is unlikely that such an inquiry would qualify as protected conduct on the theory that it conveyed to Defendants

that Plaintiff intended to file a grievance.[1]  *See Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009) ("Once a prisoner *makes clear* his intention to resort to official channels to seek a remedy for ill treatment by a prison employee, retaliation against the prisoner by that employee implicates all the policies intended to protect the exercise of a constitutional right." (emphasis added)).[2]

Even assuming that Plaintiff's statements to Defendants can be considered protected conduct, however, Defendants' second objection concerning the R&R's qualified immunity holding must carry the day. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To defeat Defendants' claim

---

[1] The court is aware that, in the affidavit Plaintiff later executed, he avers that "I told Akers I was grieving." (Aaron Aff. ¶ 33, Dkt. # 13, at 12-16.) While this might be sufficient to create an issue of fact as to whether Plaintiff communicated to at least one Defendant that he was planning to file a grievance, it does not affect the court's ultimate holding that Defendants are entitled to qualified immunity.

[2] Defendants also assert that the grievance Plaintiff allegedly threatened to file would be frivolous and would therefore be outside of the First Amendment's protection. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (noting that a prisoner's "undisputed First Amendment right to file grievances against prison officials" does not extend to the filing of frivolous grievances). In Defendants' view, because Plaintiff's 2008 major misconduct for possession of dangerous contraband disqualified him from working at MSI, any grievance he filed would seek relief not allowed under prison rules—namely, a promotion to or higher pay for a job he was not eligible to hold. Based on the current factual record and the briefing from the parties to date, however, the court cannot agree as a matter of law. The concerns Plaintiff expressed to Defendants apparently encompassed not only his claim that he was entitled to a promotion or pay raise from MSI, but also that MSI officials discriminated against him on the basis of race. It is not self-evident to the court that a grievance involving the latter issue would be patently frivolous.

8

of qualified immunity, then, Plaintiff must demonstrate not only that the facts shown "make out a violation of a constitutional right," but also that "the right at issue was 'clearly established' at the time of [Defendants'] alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A First Amendment right not to be retaliated against based upon a threat to file a prison grievance was not clearly established during the events giving rise to Plaintiff's claim. The Supreme Court has not spoken on this issue, nor has the Sixth Circuit "determined conclusively whether merely threatening to file a grievance constitutes protected activity." *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009). While the Sixth Circuit has held in an unpublished opinion that such conduct is "arguably protected by the First Amendment," *id.* at 985, and another member of this court has explicitly determined that "a clearly stated intention to file a grievance amounts to protected conduct within the meaning of *Thaddeus-X*," *Carter*, 647 F. Supp. 2d at 834, at least one other circuit has expressed doubt about this proposition, *see Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("[I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance."). Qualified immunity is designed to guard against claims grounded in precisely these sorts of uncertain legal principles.

This ambiguity in the law surrounding Plaintiff's First Amendment claim, coupled with the doubtful circumstances of Plaintiff's alleged "threat" to file a grievance—which, in fact, may have been no threat at all—mandate the conclusion that Plaintiff did not have a clearly established right against suffering adverse consequences from his complaints to Defendants. Thus, Defendants' qualified immunity precludes them from

liability on Plaintiff's § 1983 claim. Because the court must therefore grant summary judgment to Defendants on Plaintiff's only federal cause of action, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("As a rule of thumb . . . [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' objections [Dkt. # 16] are SUSTAINED and the report and recommendation [Dkt. # 15] is REJECTED.

IT IS FURTHER ORDERED that Plaintiff's motion for judgment on the pleadings [Dkt. # 9] is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment [Dkt. # 10] is GRANTED IN PART with respect to Plaintiff's claim under § 1983 for retaliation in violation of the First Amendment.

Finally, IT IS ORDERED that Plaintiff's state-law claims for conspiracy and intentional infliction of emotional distress are DISMISSED WITHOUT PREJUDICE.

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: June 29, 2012


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 29, 2012, by electronic and/or ordinary mail.

                                                   s/Lisa Wagner
                                                   Case Manager and Deputy Clerk
                                                   (313) 234-5522